UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALAN M. DAHL, | ) |
| | ) CASE NO. C13-0385-MJP-MAT |
| Plaintiff, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) RE: SOCIAL SECURITY |
| CAROLYN W. COLVIN, Acting | ) DISABILITY APPEAL |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Plaintiff Alan M. Dahl proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be REVERSED and REMANDED for additional administrative proceedings.

//

//

REPORT AND RECOMMENDATION
PAGE -1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1958.[1]  He completed three years of college, and previously worked as a security guard, vending machine coin collector, and courtesy clerk. (AR 227, 232, 236-38.)

In August 2010, Plaintiff filed an application for DIB, alleging disability beginning May 1, 2007 due to learning disorder, overactive oil glands, breathing problems, nervous condition, and sleep apnea.  (AR 206-07, 226.)  His date last insured for disability benefits is December 31, 2012.  (AR 222.)  Plaintiff's applications were denied initially and on reconsideration, and he timely requested a hearing.  (AR 123-26, 128-34.)

After an August 25, 2011 hearing (AR 41-89), ALJ Glenn G. Meyers rendered an unfavorable decision, finding Plaintiff not disabled.  (AR 26-35.)  Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on January 9, 2013 (AR 1-6), making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found that Plaintiff had an unsuccessful work attempt, but no substantial gainful activity since the alleged onset date. (AR 28.)

At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found Plaintiff's cognitive disorder and depression to be severe. (AR 28-29.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 29-30.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff had the RFC to perform the full range of work at all exertional levels, but with nonexertional limitations: Plaintiff can perform simple, repetitive tasks involving no contact with the general public and only occasional contact with supervisors and co-workers. (AR 30-34.) With this RFC, the ALJ found Plaintiff unable to perform any past relevant work. (AR 34.)

If a claimant demonstrates an inability to perform past relevant work or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With consideration of the Medical-Vocational Guidelines and the testimony of a vocational expert (VE), the ALJ found jobs existed in significant numbers in the national economy that Plaintiff could perform, such as kitchen helper and industrial

cleaner. (AR 34-35.) The ALJ, therefore, concluded Plaintiff was not under a disability at any time from the alleged onset date through the date of the decision. (AR 35.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in assessing medical opinions, his credibility, and lay testimony, and failed to meet his burden at step five. He requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision is supported by substantial evidence and should be affirmed.

## Medical Opinions

Plaintiff asserts that the ALJ erred in assessing opinions from consultative neuropsychological examiner Alan Breen, Ph.D.; consultative psychological examiner Dana Harmon, Ph.D.; and nurse practitioner Noel Howes, MN, ARNP. Plaintiff also assigns error to the ALJ's failure to discuss the treatment notes of physicians Jason Goldman, M.D., and Aaron Shur, M.D., and the report co-signed by James Hopfenbeck, M.D.

In evaluating the weight to be given to the opinions of medical providers, Social Security regulations distinguish between "acceptable medical sources" and "other sources."

Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers are considered "other sources." 20 C.F.R. §§ 404.1513(a) and (d), 416.913(a) and (d), and Social Security Ruling (SSR) 06-03p.

In general, more weight should be given to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where contradicted, an examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Less weight may be assigned to the opinions of other sources. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). However, the ALJ's decision should reflect consideration of such opinions, and the ALJ may discount the evidence by providing reasons germane to each source. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (cited sources omitted).

1. Dr. Breen

Dr. Breen examined Plaintiff twice in August 2008, and his report concluded:

> . . . [Plaintiff] seems to enjoy a job that allows him to move around a bit and provides him with stable and structured activity. I see no reason why he could not learn this type of work in the future. Hands-on learning with on-the-job training and a job coach seem to be the best approach. I do not think we can develop a job based upon his verbal intellectual skills which vastly overestimate his practical life abilities. At the same time, we do not want to put him in a job that is skilled manual requiring good spatial processing. It seems that this gentleman has a good work ethic and history if he is put into a situation that he can manage. Clearly the job has to have a slow pace with limited need for adjustment to change.

(AR 364.) The ALJ assessed the opinions of Dr. Breen as follows:

> The claimant underwent a neuropsychological evaluation in August 2008.

> According to the examiner, the claimant suffered from depression and had limited verbal intellectual skills, but there was no reason why he could not work in a job that allowed him to move around a bit and provided him with stable and structured activity with limited need for adjustment or change.

(AR 32 (citing AR 360-64).) Plaintiff contends that the ALJ erred in failing to assign a specific weight to Dr. Breen's opinion, and in failing to account for all of the limitations identified by Dr. Breen — specifically Plaintiff's need for hands-on learning and a job coach, his inability to work in a skilled manual job requiring good spatial processing, his need for a slow-paced job, and his inability to perform a job developed only on his verbal intellectual skills. Dkt. 17 at 4-5.

Though the ALJ did not explicitly indicate the weight he afforded Dr. Breen's opinion, the context of his assessment of that opinion suggests that he interpreted Dr. Breen's opinion to be consistent with his RFC assessment, which limited Plaintiff to simple, repetitive tasks. (AR 32.) Plaintiff has failed to show that the RFC assessment is inconsistent with Dr. Breen's opinion that Plaintiff cannot work in a skilled manual job or in a job developed only considering his verbal intellectual skills: on the contrary, a restriction to simple, repetitive tasks is entirely consistent with these limitations. To the extent that Dr. Breen also suggested that hands-on learning and a job coach would be "the best approach" to handle Plaintiff's vocational transition, these non-imperative recommendations need not be incorporated into an RFC assessment, which describes *the most* a claimant can do despite limitations. *See Carmickle v. Comm'r of Social Sec. Admin.*, 433 F.3d 1155, 1165 (9th Cir. 2008); Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (Jul. 2, 1996).

Dr. Breen's opinion regarding Plaintiff's need for a slow-paced job proves more

REPORT AND RECOMMENDATION
PAGE -6

problematic, however.  The Commissioner contends (without citation to case authority) that a restriction to simple, repetitive tasks is consistent with a slow pace, particularly because none of the jobs identified at step five were line-production jobs.  Dkt. 21 at 5.  It *could* theoretically be consistent, but nothing in the record would support such a finding: there is no evidence of record accounting for Plaintiff's pace deficiency via a restriction to simple, repetitive tasks (such as a State agency Mental Residual Functional Capacity Assessment (MRFCA) form), and the ALJ did not reference Plaintiff's pace deficiency in his VE hypothetical. (AR 84.)  Thus, this case is distinguishable from the leading Ninth Circuit case on this issue, *Stubbs-Danielson v. Astrue*, where the court found that an ALJ had properly translated a claimant's pace deficiency into a restriction to simple tasks.  There, a State agency consultant had indicated in an MRFCA that he considered the claimant's deficiencies as to concentration, persistence, and pace, but ultimately concluded that the claimant retained the ability to complete simple tasks.  *Stubbs-Danielson*, 539 F.3d 1169, 1173-74 (9th Cir. 2008).  Here, the State agency apparently did not complete an MRFCA form (see AR 365-77) or otherwise translate the effect of Plaintiff's pace deficiency into a concrete restriction, and no other medical evidence indicated that a restriction to simple, repetitive tasks would adequately account for Plaintiff's pace deficiency, and thus the ALJ's hypothetical was formulated without necessarily accounting for Plaintiff's pace deficiency.  *See Brink v. Comm'r of Social Sec. Admin.*, 343 Fed. Appx. 211 (9th Cir. 2009) (distinguishing *Stubbs-Danielson* on similar grounds).

Accordingly, the ALJ did not fully account for Dr. Breen's opinion and did not provide any reasons to do so, which renders the VE hypothetical incomplete.  On remand, the

REPORT AND RECOMMENDATION
PAGE -7

ALJ shall either reconsider Dr. Breen's opinion or shall obtain an updated State agency evaluation of the evidence of this case, and, if necessary, obtain additional vocational expert testimony regarding a hypothetical that accounts for all of Plaintiff's credited limitations.

2. <u>Dr. Harmon and Mr. Howes</u>

Dr. Harmon performed a psychological consultative examination of Plaintiff in June 2009, and found that he had marked and severe limitations in all cognitive categories, with additional social limitations as well. (AR 391-402.) Plaintiff argues that the ALJ did not mention Dr. Harmon's evaluation and thereby ignored evidence that did not support his ultimate conclusion. Dkt. 17 at 6.

Plaintiff's argument is factually incorrect: the ALJ did mention Dr. Harmon's evaluation (as one of the "DSHS evaluations completed in June 2009 and May 2010 . . . , which suggests that the claimant has several marked limitations in social and cognitive functioning that would render him disabled from a mental standpoint"), and provided several reasons to assign only "limited evidentiary weight" to Dr. Harmon's opinions, and to the opinion of Mr. Howes (Plaintiff's treating psychiatric nurse)[2]:

> Such severe limitations are not supported by the evidence, which reveals that [Plaintiff] worked at substantial, gainful levels prior to May 2007 despite his depressive and cognitive disorders with no significant change in his condition at that time. As noted, he is also fairly independent in his activities of daily living, living alone in an apartment, going outside daily, using public transportation, and regularly attending appointments and going to church.

---

[2] The ALJ indicated that the same reasons provided here also applied to the lay statements provided by Cristina Wirkala and Janice Cacek. (AR 33.) The Court's reasoning with regard to the propriety of the ALJ's reasoning with regard to Dr. Harmon's opinon and Mr. Howes's opinion applies equally to the statements provided by Ms. Wirkala and Ms. Cacek: Plaintiff has failed to establish that the ALJ's interpretation of the evidence of Plaintiff's ability to work until May 2007 and his ability to complete his activities of daily living is unreasonable or unsupported by substantial evidence in the record, and thus the ALJ's assessment of that lay evidence should be affirmed.

(AR 33.)  In reply to the Commissioner's response brief, which correctly noted that the ALJ did in fact address Dr. Harmon's evaluation, Plaintiff argues that the ALJ should not have relied on Plaintiff's ability to work before May 2007, because his supervisor later indicated that he was "not functioning well enough to perform basic functions at work." Dkt. 22 at 5. It is true that the record contains evidence showing that Plaintiff struggled to perform his job duties up to May 2007, but Plaintiff nonetheless left that job voluntarily. *See* AR 666-67. Plaintiff has not shown that the ALJ's interpretation of his ability to maintain employment until May 2007 was unreasonable, or that it is not a legitimate or germane reason to discount the opinions of Dr. Harmon or Mr. Howes. *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

Furthermore, though Plaintiff contends (Dkt. 17 at 6-7) that the ALJ erred in interpreting the evidence to show that he was "fairly independent in his activities of daily living," and that this was not a germane reason to discount Mr. Howes's opinion, the Court disagrees.  Mr. Howes specifically indicated that Plaintiff had difficulty with his activities of daily living (AR 405), so to the extent that the ALJ reasonably interpreted the evidence to show the contrary (see *infra*), this inconsistency is a germane reason to discount Mr. Howes's opinion.

3. Drs. Goldman and Shur

Drs. Goldman and Shur treated Plaintiff in 2008 and 2009 at a Pioneer Square outpatient clinic, and the clinic's treatment notes are included in the record. (AR 415-62.) Drs. Goldman and Shur did not provide specific opinions as to Plaintiff's functionality, but

their notes contain observations, including that Plaintiff needed assistance accessing services and that he has an "odd affect." (AR 428-29, 449-50, 454.)

The ALJ did not explicitly mention the Pioneer Square clinic treatment notes in his decision. Plaintiff maintains that the ALJ erred in not discussing these notes, because they are consistent with opinions of record. Dkt. 17 at 8. According to the Commissioner, the ALJ did not need to discuss the treatment notes because they were not significant or probative, and Plaintiff describes this argument as a post hoc rationale. Dkt. 22 at 5.

Plaintiff's characterization of the Commissioner's argument is incorrect: the Commissioner is not offering her argument to explain why the ALJ's error was harmless — i.e., explaining that even though the ALJ did not address the treatment notes, the error was harmless because the evidence was not significant or probative anyway — but to explain why the ALJ did not need to address the treatment notes in the first place. The Court agrees with the Commissioner that the treatment notes from the Pioneer Square clinic are not significant or probative as to Plaintiff's ability to work, because the treatment notes contain no opinions regarding functionality. The ALJ therefore did not reject any significant or probative opinions contained within the treatment notes, because no such opinions exist. Accordingly, the ALJ did not err in failing to discuss the treatment notes of Drs. Goldman and Shur. *See Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (holding that the ALJ "may not reject 'significant probative evidence' without explanation" (quoting *Vincent v. Heckler*, 739 F.3d 1393, 1395 (9th Cir. 1984))).

    4.    <u>Dr. Hopfenbeck</u>

Plaintiff argues that the ALJ erred in failing to indicate the weight afforded to the

opinion of Dr. Hopfenbeck, whom he describes as a treating physician. Dkt. 17 at 8. Plaintiff cites no evidence that Dr. Hopfenbeck ever treated Plaintiff, though Dr. Hopfenbeck did co-sign a letter written by Cristina de Melo Wirkala, an employment specialist at the Downtown Emergency Services Center (DESC), and Mike Donegan, DESC's program manager for the Supported Employment Program. (AR 673-75.) The ALJ did discuss this letter, though he did not explicitly note that the letter was cosigned by Dr. Hopfenbeck, and explained why he gave it "little evidentiary weight." (AR 33.) The context of the ALJ's decision suggests that the ALJ viewed the Wirkala/Donegan/Hopfenbeck letter as a lay statement, rather than a medical opinion.

Though Plaintiff cites *Gomez* as support for his argument that the Commissioner erred in treating the Wirkala/Donegan/Hopfenbeck letter as lay evidence in briefing (Dkt. 22 at 5 (citing 74 F.3d at 970-71), *Gomez* does not control here. *Gomez* held that an opinion written by a nurse practitioner working closely under the supervision of the treating physician is properly considered an opinion of an acceptable medical source (74 F.3d at 971), but here there is no evidence that Ms. Wirkala and Mr. Donegan worked closely with Dr. Hopfenbeck. Dr. Hopfenbeck is described as DESC's medical director, but Ms. Wirkala and Mr. Donegan work in DESC's employment program, and the letter does not address any medical treatment or medical opinions. (AR 675.) Thus, the ALJ did not err in considering the Wirkala/Donegan/Hopfenbeck letter as lay evidence. *See Ramirez v. Astrue*, 803 F.Supp.2d 1075, 1081-82 (C.D. Cal. 2011) (explaining that the *Gomez* exception does not apply in the absence of evidence showing that an authoring "other" source worked with or under the close supervision of an acceptable medical source in treating a claimant or in preparing

REPORT AND RECOMMENDATION
PAGE -11

evaluations). For the reasons explained *supra*, note 2, the ALJ's assessment of this letter should be affirmed.

### Credibility

In assessing credibility, an ALJ must first determine whether a claimant presents "objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Given presentation of such evidence, and absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Id*. *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

In finding a Social Security claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Comm'r of Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

REPORT AND RECOMMENDATION
PAGE -12

The ALJ found Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible. He explained:

> As an initial matter, the undersigned notes that the claimant's activities of daily living, including maintaining his own apartment, taking care of his own personal needs, cooking light meals, going outside daily, using public transportation, attending appointments, regularly going to church, shopping in stores, and handling his own money, for example, are inconsistent with his allegation of total disability.
>
> The medical evidence of record also does not substantiate the claimant's allegations of disabling limitations. For example, he alleges disability based primarily on mental limitations since May 2007, but he has a life-long history of depression and learning difficulty, and the records do not evidence any significant change in or worsening of his condition at alleged onset date. In fact, he worked until that time, and he reportedly gave up a job that he liked not due to his medical condition, but to help his wife. [AR 214, 363.]
>
> [assessment of the medical evidence omitted]
>
> In short, the medical evidence does not reveal any continuous or expected 12-month period of disabling functional mental limitations. The claimant has no psychiatric hospitalizations, and he is largely independent in his activities of daily living, despite having never taken antidepressant medications.
>
> [assessment of medical and lay evidence omitted]
>
> Lastly, after carefully observing the claimant at the hearing, I further note that his verbal responses and overall demeanor were not suggestive of a person who is experiencing disabling limitations. While these observations are just one of many factors that the undersigned has considered, he was able to answer questions quite clearly, despite his disabling depression and cognitive limitations.
>
> In sum, the claimant's activities of daily living, the medical and other evidence of record, and the findings of the State agency consultants suggest that the claimant can sustain a greater capacity than he described at the hearing. Given this evidence, the undersigned concludes that his subjective complaints and alleged limitations are not fully persuasive. He retains the ability despite his impairments to perform the above-referenced range of simple, repetitive work

involving no public contact and occasional contact with supervisors and coworkers.

(AR 32-34.)

Plaintiff first argues that the ALJ erred in construing Plaintiff's work history against his credibility, in light of *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998). *Schaal* does not support Plaintiff's position, however, because it notes that both good and poor work history can bear on a claimant's credibility, without indicating that a good work history must bolster rather than undermine the credibility of subjective complaints of disabling symptoms. 134 F.3d at 502-03. While it is true, as Plaintiff contends, that the existence of prior jobs does not support a *presumption* of non-disability, the ALJ applied no such presumption here. The ALJ indicated that he found that Plaintiff's limitations were not totally disabling because Plaintiff was able to maintain a job[3] until May 2007, and voluntarily quit at that time to care for his wife rather than on the basis of his allegedly disabling impairments, and there is no evidence that any of his impairments worsened after May 2007. (AR 32.) Plaintiff has failed to establish that the ALJ's inference was not reasonable, under these circumstances. *See, e.g., Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) ("[The claimant] was able to hold two previous jobs with a fair amount of success, and even if those particular jobs are, as she claims, too taxing for her, the vocational counselor testified that she is qualified for thousands

---

[3] Though Plaintiff suggests that his prior job involved special accommodations, he has identified no evidence of record establishing the existence of special accommodations as defined by 20 C.F.R. §404.1573(c). Plaintiff argues that the ALJ ignored the special circumstances at his former workplace that explain "why [he] was able to retain a job despite severe problems," but no such special circumstances exist. Dkt. 17 at 13. Plaintiff's former supervisor described Plaintiff's struggles at work (AR 666-67) to explain why Plaintiff would not be eligible for re-hire, but did not describe any circumstances suggesting that Plaintiff's work was akin to work done in a sheltered workshop. Thus, the ALJ did not err in considering Plaintiff's past work as substantial gainful activity.

REPORT AND RECOMMENDATION
PAGE -14

of less strenuous jobs.").

Plaintiff next challenges the ALJ's reasoning with regard to his activities of daily living. Plaintiff contends that in describing his activities (AR 32), the ALJ overlooked evidence (provided by Plaintiff himself and lay witness Ms. Cacek) that Plaintiff required encouragement and reminders to complete activities such as cleaning, that the meals he made were simple and not particularly nutritious, that he has poor dental hygiene, and that he attends church but does not socialize there. Dkt. 17 at 11. Plaintiff has not identified omitted details that show that the ALJ's characterization of his daily activities is unreasonable. Though Plaintiff did indicate that he was able to motivate himself to clean his apartment only in anticipation of an inspection (AR 64-65), he was nonetheless able to maintain housing, clutter notwithstanding. Ms. Cacek also indicated that Plaintiff was able to manage "simple laundry." (AR 276.) As to Plaintiff's ability to prepare meals: the ALJ did not posit that Plaintiff made complex, nutritious meals, but merely "light meals." Plaintiff testified that he chooses not to make complex meals because his schedule does not allow it (AR 62), and he also testified that he can take care of all of his personal hygiene needs except for his dental care, because he has gotten out of the habit of brushing his teeth (AR 64-65). Recent treatment notes indicate that he is making progress in seeking dental care. (AR 631, 652-53.) Finally, when asked at the administrative hearing to describe his social life, Plaintiff's primary answer involved his church attendance. (AR 70-71.) In light of the context of all of these statements, Plaintiff has failed to establish that the ALJ's interpretation of his daily activities was unreasonable, or that the ALJ erred in finding his daily activities to be inconsistent with his allegations of disabling impairments. Accordingly, the ALJ's adverse credibility finding

REPORT AND RECOMMENDATION
PAGE -15

should be affirmed.

Step Five

As explained *supra*, the ALJ erred at step five in formulating a VE hypothetical that did not account for Plaintiff's pace deficiency identified in Dr. Breen's opinion. On remand, the ALJ shall either reconsider Dr. Breen's opinion or shall obtain an updated State agency evaluation of the evidence in this case, and, if necessary, obtain additional vocational expert testimony regarding a hypothetical that accounts for all of Plaintiff's credited limitations.

**CONCLUSION**

For the reasons set forth above, this matter should be REVERSED and REMANDED for additional administrative proceedings. A proposed order accompanies this Report and Recommendation.

DATED this 26th day of August, 2013.

Mary Alice Theiler
Chief United States Magistrate Judge